## DELMAR CO. v. GREAT NORTHERN RY. CO.

District Court, D. Minnesota, Fourth Division.
August 8, 1929.

Shaw, Safford, Putnam & Shaw and Sam. W. Campbell, all of Minneapolis, Minn., for plaintiff.

F. G. Dorety, R. J. Hagman, and J. H. Mulally, all of St. Paul, Minn., for defendant.

SANBORN, District Judge. The case involves the interpretation of a tariff filed by the defendant with the Interstate Commerce Commission. The facts are undisputed, and the only question involved is one of law.

The plaintiff brought this action against the defendant to recover $648.84 and interest, the amount of alleged excessive charges collected by the defendant in transporting 26 carloads of grain during the period from April 27, 1922, to September 11, 1922.

The shipments all originated at numerous points on the Great Northern in Minnesota, North Dakota, and South Dakota, were consigned by various shippers to Minneapolis, and, after arrival at Minneapolis, were reconsigned by the plaintiff in the same cars to Superior, Wis., where delivery was made. The entire transportation was over the rails of the defendant. The defendant collected its local rate applicable from the country station to Minneapolis, plus its proportional rate applicable from Minneapolis to Superior. These combinations of rates were higher than the rates which the defend-ant's tariff specified for transportation of grain from the country stations to Superior. It is the difference between the rate charged and the through rate for which the plaintiff sues.

On December 4, 1924, the plaintiff filed a complaint entitled "Delmar Company, Complainant, v. Great Northern Railway Company, Defendant," Docket No. 16576, before the Interstate Commerce Commission, by which it sought reparation for the same alleged excessive charges. Issues were joined in that proceeding, and on January 10, 1927, the Commission issued its report (120 I. C. C. 530), in which it found that the rates named in the defendant's tariff for transportation from the country stations to Superior were applicable via the longer route through Minneapolis, and on October 10, 1927, entered its order requiring the defendant to pay the plaintiff $648.84, with interest from September 15, 1922, as reparation "on account of inapplicable rates charged." The defendant declined to pay the reparation, and thereupon the plaintiff instituted this suit.

The plaintiff's contention is that the defendant's rate from the country stations in question to Superior applied via Minneapolis, although that was the longer route, because the tariff did not expressly restrict the application of the rate to the shorter and more direct route.

The defendant's contention is that the rate published for transportation from these stations to Superior applied only over the direct and shorter route, and not via the longer route through Minneapolis, over which these shipments moved.

The tariff naming the rate from the stations in question to Superior, at the time of these shipments, was silent as to the route over which the rate would apply, although it has since been changed so as to exclude the route through Minneapolis upon the through rate.

The defendant bases its contention on two propositions:

(1) That, under the law, where a tariff fails to state over what route a through rate is available, the law will imply that the rate applies to the shortest, most direct route.

(2) That if it should be held that the through rate applied to these shipments, it would produce an unlawful result, because it would then appear that, under the defendant's tariff, a greater charge was made for a shorter than for a longer haul, an example of which would be that there would be a higher rate from Howes, N. D., to Cambridge, Minn., than from Howes to Superior.

The defendant, in support of its contentions, cites paragraph (1) of section 6 of the Interstate Commerce Act (49 USCA § 6) which requires carriers to file with the Commission and publish tariffs showing their charges "for transportation between different points" upon their lines, and paragraph (7) of the same section, which forbids any carrier to "extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." It is claimed that, to permit one shipper to bill his grain to Minneapolis, the primary grain market, on an indirect route, and to there sell it and have it reconsigned to Superior, would be granting privileges or facilities greater than permitted to a shipper who forwarded his grain on a through bill of lading to Superior.

The evidence here and before the Commission indicated that the practice of the defendant was to move all grain billed to Superior over the shorter, more direct route.

Were this a case of first impression, it would seem as though the contention of the defendant should be sustained. In the absence of any restriction as to route, common sense would seem to indicate that the tariff referred to the natural and direct route, and did not extend to shippers the privilege of using a longer and more circuitous route. The routes from the stations in question to Superior via Minneapolis were from 12 per cent. to 23 per cent. longer than through Willmar, and moreover involved transporting these cars through crowded terminals. Obviously, the transportation service rendered by the railroad was greater than it would have been had the cars moved by the shorter route. However, it appears that the Interstate Commerce Commission has, for a considerable time, held that, if it is a carrier's purpose to restrict the application of a rate to any particular route, and any reconsigning privileges authorized in connection therewith to any particular point, that must be done by clear and unequivocal language. Van Dusen Harrington Co. v. C., M. & St. P. Ry. Co., 47 I. C. C. 59; Meeds Lumber Co. v. Director General, 59 I. C. C. 243; Freeman Grain Co. v. Director General, 68 I. C. C. 559; Pioneer Lumber Co. v. Director General, 74 I. C. C. 288; Baker-Reid Lumber Co. v. B. & O. R. R. Co., 74 I. C. C. 489; Richardson Sand Co. v. Director General and C. & N. W. Ry. Co., 89 I. C. C. 555; Scott County Farm Bureau v. A. & V. Ry. Co., 101 I. C. C. 357; Browne-Hinton Wholesale Grocery Co. v. G. N. Ry. Co., 102 I. C. C. 237; Delmar Co. v. G. N. Ry Co., 120 I. C. C. 530; Thames v. Southern Ry. Co., 128 I. C. C. 508; Northwestern Fruit Exchange v. G. N. Ry. Co., 128 I. C. C. 538.

I do not understand that the Commission has held that, where a through rate is published without restricting the movement to any particular route, a shipper may use any route, no matter how circuitous. In their reports, in referring to the routes in controversy, they have used the words "workable," "reasonable," "available," and "not out of route movement."

In the case of Delmar Co. v. G. N. Ry. Co., supra, they refer to the route over which the shipments in question moved as being an "open route." Apparently by this they meant that it was an unrestricted and available route and not unduly circuitous. That would seem necessarily to follow from the conclusion which they arrived at. It is suggested by the plaintiff that the finding of the Commission in that regard is conclusive upon this court. Under section 16 of the Interstate Commerce Act (49 USCA § 16) it would appear that it was merely prima facie evidence. However that may be, I think that the court should not in this case upset that finding of the Commission. Its repeated holdings that, unless a tariff specified the route over which a through or joint rate applied, it would be deemed to apply to other available routes, seems to have become a rule of tariff construction. The question of what would be a "workable," "reasonable," "available," and "not out of route movement" route is a question of fact, about which reasonable minds might easily differ, and the best results in cases of this kind will no doubt be obtained if the Commission's judgment on such questions—which are peculiarly within their province—is adhered to by the courts. While the reasoning of Commissioner Taylor who wrote the dissenting opinion in Delmar Co. v. G. N. Ry. Co., supra, appeals to me as sound, I think the majority were justified by former rulings in arriving at the conclusion which they did, and which I do not feel warranted in disturbing.

I therefore find in favor of the plaintiff, that it is entitled to judgment for $648.84, with interest thereon from September 15, 1922, and the costs and disbursements of this action.

In order to preserve the rights of the defendant upon review, it is allowed an exception to the denial by this court of its motion for findings and judgment in its favor, made upon the sole and only ground that the evidence would support no other conclusion.